IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHEDRICK L. WILLIAMS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:17-CV-1621 |
| | § | |
| NANCY A. BERRYHILL, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| *Defendant*. | § | |

## **MEMORANDUM AND ORDER**

Plaintiff Shedrick L. Williams, filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying his request for social security disability insurance benefits. Williams and the Commissioner filed cross-motions for summary judgment (Dkts. 12, 13). After considering the pleadings, the record, and the applicable law, the court **DENIES** Williams's motion, **GRANTS** the Commissioner's motion, and affirms the decision of the Commissioner.[1]

### **I. Background**

**1. Factual and Administrative History**

Shedrick L. Williams filed a claim for social security disability insurance benefits on March 28, 2014 alleging the onset of disability as of March 11, 2012[2] due to seizures, high blood pressure, brain surgery, heart trouble, and vision trouble. Dkt. 6-3 at 11; Dkt. 6-6 at 2; Dkt. 6-7 at

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment. Dkt. 15.
[2] Williams alleged onset as of March 3, 2011 in his application, but amended it to March 11, 2012 at the hearing. Dkt. 6-3 at 49.

6. His claim was denied on initial review and reconsideration. The administrative law judge (ALJ) held a hearing on November 9, 2015 at which Williams and a vocational expert testified. Dkt. 6-3 at 36-62. The ALJ issued an unfavorable decision on March 2, 2016. Dkt. 6-3 at 11-27.

Williams requested review by the Appeals Council of the ALJ's unfavorable decision, which was denied on March 24, 2017, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

2. **Standard for District Court Review of the Commissioner's Decision**

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[3] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the

---

[3] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is "deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, 605 Fed. App'x 233, 236 (5th Cir. 2015).

3. **Disability Determination Standards**

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your

physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c). Under Fifth Circuit binding precedent, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "Re-stated, an impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. *Id.* This second step requires the claimant to make a *de minimis* showing. *See Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### 4. The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Williams met the insured status requirements of the Social Security Act through December 31, 2017, and did not engage in substantial gainful activity after March 11, 2012, his alleged onset date. The ALJ found that Williams has the severe impairments of obesity, degenerative osteoarthritis of the lumbar spine, mild cardiomegaly, past history of bradycardia, seizure disorder, and ataxia, as well as several non-severe impairments. Dkt. 6-3 at 14. The ALJ analyzed Williams's mental impairments under the "special technique" for mental impairments, 20 C.F.R. 1520a(d)(2). Dkt. 6-3 at 14-18. The ALJ found that Williams's impairments did not meet or equal the severity of a listed impairment in Appendix 1. Dkt. 6-3 at 18-19.

The ALJ found Williams had the residual functional capacity to perform light work, except that "he cannot climb ropes, ladders, or scaffolds. He cannot work around hazards such as unprotected heights, open water or flame and/or dangerous moving machinery." Dkt. 6-3 at 19. Based on the testimony of a vocational expert, the ALJ found that Williams could not perform

his past relevant work as a chemical plant operator, but considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that claimant could perform and therefore he was not disabled at any time from his alleged onset date through the date of the ALJ's decision. Dkt. 6-3 at 25-27.

## II. Analysis

Williams argues that the ALJ's RFC decision is not supported by substantial evidence because the ALJ rejected the medical opinions of consulting physicians and did not develop the record by obtaining a medical opinion from a treating source. Williams contends that had the ALJ found him to be limited to sedentary work due to seizures, he would have been disabled pursuant to medical vocational guidelines. Dkt. 12 at 5.

1. **The RFC determination.**

In making her RFC determination, the ALJ considered the record as a whole, including Williams's medical records, reported activities of daily living, hearing testimony, and the medical opinion evidence. Dkt. 6-3 at 25. In doing so, the ALJ considered the opinion of a consulting examiner, Dr. Parul R. Shah, who performed a disability evaluation May 28, 2014. Dkt. 6-8 at 59-61. Shah performed a physical examination, which was unremarkable. Then, based solely on Williams's self-reporting, Shah concluded that Williams's "seizures are not controlled with Dilantin and he is not able to drive or do any work because of his seizures. He is physically disabled." Dkt. 6-8 at 60. The ALJ gave Shah's opinion little weight because "it is not supported by the objective clinical findings and inconsistent with the other substantial evidence in the case record" showing that Williams's seizures in fact are well-controlled on medication. Dkt. 6-3 at 22.

The ALJ also considered the physical and mental residual functional capacity opinions from state agency consulting physicians who reviewed the case at the initial and reconsideration stages. Dkt. 6-3 at 25; Dkt. 6-4 at 7-19; Dkt. 6-4 at 21-34. The ALJ rejected the mental capacity opinions because they were based on a one-time consultative psychological examination, not on Williams's medical history as a whole. Dkt. 6-3 at 25. The ALJ accepted the physical capacity opinions only in part, because the opinions concluded that Williams could perform a limited range of medium work, but "evidence received at the hearing level shows that the claimant is more limited physically than was determined by the State Agency's consultants." *Id.*

Williams' medical records do indicate a history of seizures. However, records from 2010-2012 primarily relate to his treatment for hypertension with few references to seizures. Dkt. 6-8 at 37-58. Treatment notes from June 21, 2012 indicate Williams reported his last seizure 2-3 months ago. Dkt. 6-8 at 36. Treatment notes from December 28, 2012 state Williams was doing well, his depression and anxiety was improved and controlled with medication, he had stopped seeing his cardiologist, his hypertension was controlled with medication, and he had a small seizure 3 months prior. Dkt. 6-8 at 34. His next visit was April 12, 2013. He did not mention any new seizures and physical exam was unremarkable. Dkt. 6-8 at 33.

Williams's counsel referred him for a psychological evaluation with Dr. Jim Whitley on September 23, 2013. Williams reported to the psychologist that he had "five bad seizures" after brain surgery in 1994, most recently in June 2013. Dkt. 6-8 at 10-11. Dr. Whitley diagnosed Williams with mood disorder, somatization disorder, and cognitive disorder and opined his prognosis is very poor and "he is currently unemployable." Dkt. 6-8 at 16. At an October 8, 2013 check up, the doctor noted Williams had hypertension, seizure disorder, and morbid obesity, but

7

Williams did not report any recent seizures. Dkt. 6-8 at 31. The treatment notes do not mention any mental disorder. *Id.*

On February 6, 2014, Williams told his doctor he had had no recent seizures or syncope. Dkt. 6-8 at 30. Williams visited the emergency room on February 12, 2014 for low back pain resulting from lifting a bucket, but was released in good condition with pain medication. Dkt. 6-8 at 23.

In April 2014, Williams established a primary care relationship with a doctor at the Veteran's Administration Medical Center. Dkt. 6-9 at 2. He reported his history of seizures developed after his 1994 surgery and that his primary care physician was monitoring his medication, but he did not report any recent seizures. Dkt. 6-9 at 5. Williams was referred to a weight management program, *id.*, and in July 2014 he was considered "safe to engage in physical activity" with "no exercise limitations." Dkt. 6-8 at 74. In August 2014, he complained of blurry vision and face numbness and was referred to a neuro-ophthalmology clinic, but did not complain of a seizure. Dkt. 6-9 at 18-20, 29. At a September 2014 check-in he reported walking and/or riding a stationary bicycle twice a day for 30 minutes and did not report any seizures. Dkt. 6-9 at 21. Notes from an October 22, 2014 primary care follow-up state "Patient had a seizure in last one month on phenytoin," but no details of the incident are provided, Dkt. 6-9 at 25, and there are no records indicating he sought emergency treatment. At his neuro-ophthalmology appointment on October 27, 2014 he reported blurry vision and was told to return for follow up after an MRI. Dkt. 6-9 at 33. The MRI showed "no evidence of intracranial aneurysm or fistula," but "Right lateral cerebellar resection cavity without lining suspicious for residual or recurrent tumor." Dkt. 6-9 at 49. An EEG in January 2015 was abnormal, but Williams was instructed to

continue Dilantin and physical therapy and follow-up in 6 months for a repeat MRI. Dkt. 6-8 at 76.

In February 2015, returned to the VA for a neurosurgery consult. Although his seizure disorder was noted in his history, he told his physician that "persistent balance problems since surgery . . . bother him the most" and he denied any neuro/psychiatric or musculo/skeletal problems. Dkt. 6-89 at 80-81. He began physical therapy for his balance and gait issues in February 2015. Dkt. 6-9 at 87. The provider noted that Williams self-reporting of his condition was contradictory, stating at one point his equilibrium problems started in 1994 and another time in 2008. Dkt. 6-9 at 88. He also told the provider that his last seizure was in December and they are more controlled now. *Id.* At a February 24, 2015 physical therapy session Williams reported that he was "seeing a difference" and he demonstrated "improved static standing balance." Dkt. 6-9 at 101. On March 23, 2015, Williams reported "I'm starting to see a difference. It's really helping me. My balance is improving, too" and he reported at his March 31, 2015 session that "he is getting better and able to do more." Dkt. 6-9 at 105, 6-10 at 4. In April 2015, he reported to his physical therapist that he had a seizure that week "for the first time in a long time." Dkt. 6-10 at 3. On April 28, 2015 Williams stated "I don't know if you've noticed, but I'm a whole lot better than I was when I first came here." Dkt. 6-10 at 16. Williams attended his last physical therapy session on May 28, 2015. He reported walking more. His therapist noted Williams was seen for 17 sessions, "focused on stretching, strengthening, posture, core strengthening, balance, and education," and made much improvement, meeting ¾ of his goals. Dkt. 6-10 at 20. He was instructed to re-consult in the future if needed. *Id.*

On June 2, 2015, Williams was admitted to the hospital due to a possible seizure. Dkt. 6-10 at 35. No functional deficits were noted. Dkt. 6-10 at 44. He described the types of events he

has a history of experiencing as (1) "feet going up and down" while sitting or lying down, he is able to stop the movements, 2-3 times per week; (2) "head bobbing" as if dozing off when in car or doing cross word puzzles, 1-2 times per week; and (3) "staring while standing . . . slowly fell to the ground." Dkt. 6-10 at 52. His wife has observed type three only once, and Williams reported it had happened only 3 times in his lifetime. *Id.* He was reassured that there was "no particular concern" and underwent observation and neurological testing. *Id*. He was discharged with a diagnosis of benign nonepileptic events and focal epilepsy–complex partial seizures and given no activity restrictions. Dkt. 6-11 at 11-12. At a follow up in August 2015, it was noted that Williams was doing well, with no further seizures. Dkt. 6-11 at 17. At a neurology consult in September, 2015, Williams reported gait difficulty, but stated that Dilantin helped his seizures. Dkt. 6-11 at 28. He was advised not to drive until 6 months after his last event, and not to operate heavy machinery or work from heights and not to swim or bathe alone. Dkt. 6-11 at 31.

In determining that Williams had the RFC to perform a limited range of light work, the ALJ concluded:

> In sum, the longitudinal medical evidence as well as the claimant's activities of daily living support the residual functional capacity. Due consideration has been given to credibility, motivation, the objective medical evidence and opinion, clinical and laboratory findings, diagnostic tests, the extent of medical treatment and relief from medication and therapy, the claimant's daily activities, the extent, frequency, and duration of symptoms, attempts to seek relief from symptoms, the claimant's earnings record, and all the evidence of record.

Dkt. 6-3 at 25. Based on the evidence of record discussed above, the court concludes that the ALJ did not err when deciding the weight to afford the consulting physician medical opinions and the RFC determination is supported by substantial evidence.

**2. Duty to develop the record.**

It is well-established that "the ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ in this case noted that no treating physician had expressed an opinion regarding Williams' ability to perform work-related functions. Dkt. 6-3 at 25. However, the absence of a medical source statement describing the types of work a claimant is capable of performing does not necessarily make the record incomplete. *Ripley*, 67 F.3d at 557. Instead, in the absence of a medical statement describing the types of work that the applicant is still capable of performing, the "…inquiry focuses on whether the ALJ's decision is supported by substantial evidence in the existing record." *Id*.

In *Ripley*, the Fifth Circuit held that the ALJ's conclusion was not supported by substantial evidence. *Id.* Despite "a vast amount of medical evidence establishing that Ripley ha[d] a problem with his back," and Ripley's own testimony that he could not "sit or stand for any length of time without experiencing a great deal of pain[,] [t]he ALJ concluded that he was capable of sitting for six hours of work a day because he … went to church, rode in a car for an hour and a half to attend the hearing, and occasionally drove." *Id*. at 557, n.28. In its opinion, the Fifth Circuit noted the absence of a medical source opinion regarding Ripley's limitations, and the ALJ's failure to consider Ripley's testimony that he was unable to sit for the entire duration of the drive to the hearing and he had to lay down in the back of the station wagon. *Id.* at 554, n.4; at 557, n.28. Therefore, citing 20 CFR § 404.1527(c)(3), which requires an ALJ to obtain additional information regarding an applicant's ability to work when the record is insufficient to

make a determination of disability, the Fifth Circuit instructed the court on remand to obtain a report from a treating physician.[4]

The ALJ in this case had access to a consultant expert's report, state agency medical opinions, the longitudinal medical evidence, and evidence of Williams' activities of daily living. Williams argues that *Ripley* requires remand because the ALJ afforded little weight to the consultant expert report, and refused to accept all of the opinions put forth by the state agency consultants. It is the ALJ's duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case. *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988). The ALJ in this case considered the consultant expert's opinion and gave it little weight because it was "not supported by the objective clinical findings" and was "inconsistent with other substantial evidence in the case record." Dkt. 6-3 at 22. Furthermore, the ALJ considered the state agency consultants' opinions that Williams was able to perform a limited range of medium work, but found that "evidence received at the hearing level shows that the claimant is more limited physically than was determined by the state agency consultants." Dkt. 6-3 at 25. The ALJ's resolution of conflicts in the evidence and her resulting decisions as to how much weight or effect to give to medical and consultant opinions does not transform the case into one lacking substantial evidence for the ALJ's decision.

This case more closely parallels *Guitierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289 *6 (5th Cir. Aug. 19, 2005) than *Ripley*. In *Guitierrez*, the Fifth Circuit concluded that the ALJ's RFC determination was supported by substantial evidence without the need for an updated medical source opinion on Gutierrez's ability to perform work even though the ALJ "essentially rejected part of the medical opinion" of Gutierrez's treating physician and the state

---

[4] The Fifth Circuit had already determined that remand of Ripley's case was necessary for another reason when it considered whether the ALJ had fulfilled his duty to fully develop the record and substantial evidence supported the determination of no disability. *Id.* at 556.

agency reviewing physician. *Id.*; s*ee also Cornett v. Astrue*, 261 Fed. App'x 644, 649 (the duty to contact a medical source arises only when the record is inadequate to determine disability). Here, the state agency consultants opined that Williams was able to perform a limited range of medium exertion work. Dkt. 6-3 at 25. Implicit in these opinions is the opinion that Williams was able to perform work at the light exertion level. *See* 20 C.F.R. § 404.1567(c) ("If someone can do medium work, we determine that he or she can also do sedentary and light work."). The court concludes that substantial evidence supports the ALJ's RFC determination and therefore, the ALJ did not err by failing to re-contact a treating physician to obtain a supplemental opinion.

### III. Conclusion

The court concludes that the ALJ's decision is supported by substantial evidence and is not based on an error of law. Therefore, Williams's motion is **DENIED**, the Commissioner's motion is **GRANTED**, and the Commissioner's decision denying benefits is **AFFIRMED**.

Signed on August 21, 2018, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge